Affirmed and Memorandum Opinion filed February 12, 2008








Affirmed and Memorandum Opinion filed February 12, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00046-CR

____________

 

JOSE GUTIERREZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 248th
District Court

Harris County, Texas

Trial Court Cause No. 1078965

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Jose Gutierrez, appeals from his conviction for
aggravated kidnapping.  After being certified to be tried as an adult,
appellant pleaded guilty to the charged offense.  A jury then found him guilty
(as instructed by the court), found the allegations in an enhancement paragraph
to be true, and assessed punishment at life in prison.  In a single issue,
appellant contends that the trial court erred in refusing to submit a jury
instruction on voluntary release in a safe place.  We affirm.








Background

Kanokwan Keokhum testified that on December 28, 2005, she
began walking from her automobile to her apartment when she saw appellant and
another man (later identified as Johnny Rivera) approaching her from the side. 
Rivera had a knife in his hand; he pointed it at her stomach and demanded
money.  She gave her car keys to Rivera, then appellant asked Rivera for the
keys.  Rivera pushed Keokhum into the back seat of her car, while appellant got
into the front seat and started the vehicle.  They drove around for a time
before stopping in a parking lot, where appellant took the knife from Rivera
and got into the back seat, while Rivera got into the driver=s seat.  Appellant
pointed the knife at Keokhum, pushed her head down, and told her to remove her
shirt.  She did so, and he used the knife to cut open her brassiere.  Both men
then touched Keokhum=s breasts, causing her pain.  She resisted
and appellant slapped her ten to fifteen times.  The men told Keokhum to remove
her pants, and appellant then removed her underwear.  Appellant slapped her
several more times and began to kiss her.  Appellant ordered Keokhum to put her
finger in her vagina and told her to perform oral sex on him.  When she
pretended to not understand what he was saying, he slapped her again.  Rivera
then suggested stopping the vehicle, as he had apparently driven away from the
parking lot after getting in the driver=s seat.

They stopped in a residential area that was unfamiliar to
Keokhum, and appellant pulled her from the car.  She was completely naked, it
was dark, and it was a very cold day.  While brandishing the knife, appellant
ordered Keokhum to lay on the ground.  She did so, and he proceeded to kick her
approximately three times in the abdomen and once in the head.  Keokhum then
raised her leg in a defensive manner, causing appellant to lean backward. 
Keokhum figured this might be an opportunity to escape, so she ran, crying out
for help.  Appellant ran after her a short distance before returning to the
vehicle.  The two men then drove away.  After running down the street for a
time, Keokhum managed to find a lady in a car who helped her contact the
police.  Keokhum later positively identified appellant as one of her
assailants.








Analysis

In his sole issue, appellant contends that the trial court
erred in refusing to submit a jury instruction on voluntary release in a safe
place.  Under Penal Code section 20.04(d), a defendant accused of aggravated
kidnapping may raise an issue in the punishment phase as to whether he
voluntarily released the victim in a safe place.  Tex. Penal Code Ann. ' 20.04(d) (Vernon
2003).  If the defendant proves the issue by a preponderance of the evidence,
the offense is classified as a second degree felony as opposed to a first
degree felony.  Id. ' 20.04(c), (d).  The Court of Criminal
Appeals has determined that a narrow rather than a broad definition of Avoluntarily@ applies to
section 20.04(d), so that to be voluntary, the release must not have been
occasioned by rescue by the police or others, or escape by the victim, among
other things.  Brown v. State, 98 S.W.3d 180, 183‑88 (Tex. Crim.
App. 2003); see also LaHood v. State, 171 S.W.3d 613, 624-25 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d).[1]

In order to raise the issue of voluntary release to a safe
place, a defendant must offer evidence that he or she performed some overt and
affirmative act that informs the victim that he or she has been fully released
from captivity.  Ballard v. State, 193 S.W.3d 916, 919 (Tex. Crim. App.
2006).  In other words, the defendant must show that he or she actually
released the victim.  LaHood, 171 S.W.3d at 624-25.








Here, the only evidence regarding the moment when Keokhum
left her captivity comes from Keokhum herself.  As detailed above, she
testified that after appellant pulled her out of the vehicle, forced her to the
ground at knifepoint, and kicked her, she managed to gain her feet and run
screaming from appellant.  Keokhum further testified that appellant followed
her for a time before returning to the vehicle and driving away.  Nothing in
Keokhum=s testimony
suggests that appellant performed any overt and affirmative act informing her
that she was fully released from captivity.  To the contrary, the evidence
demonstrates that Keokhum escaped.  Appellant points to no other evidence as
proof that he voluntarily released Keokhum.  Accordingly, appellant failed to
establish entitlement to a jury submission on voluntary release to a safe
place.  We overrule his sole issue.

We affirm the trial court=s judgment.

 

 

/s/      Adele Hedges

Chief Justice

 

 

Judgment rendered
and Memorandum Opinion filed February 12, 2008.

Panel consists of
Chief Justice Hedges and Justices Anderson and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Factors relevant to determining whether the place of
release can be considered safe include:  (1) the remoteness of the location;
(2) the proximity of authorities or persons who could assist the victim; (3)
the time of day; (4) climatic conditions; (5) the condition of the victim; (6)
the character of the location or surrounding neighborhood; and (7) the victim=s familiarity with the location or surrounding
neighborhood.  LaHood, 171 S.W.3d at
624.